E. & J. NORTHMAN, use, etc. *vs.* LIVERPOOL, LONDON & GLOBE INS. Co. & others.

OCTOBER Term, 1873.

BANKRUPTCY—ASSIGNEE—REVIVOR.—The bankruptcy of a complainant does not abate a suit in chancery, and, therefore, technically a revivor in such case is not necessary, the appropriate proceeding by the assignee being an original bill in the nature of a supplemental bill.

PLEADING—SUBSTANCE.—If the bill filed by the assignee in such case be, in substance, an original bill in the nature of a supplemental bill, the fact that it is called on its face a bill of revivor and amended bill will not change its character, and a motion to dismiss based upon grounds applicable alone to a bill of revivor will be disallowed.

*R. McP. Smith*, for complainants.
*Ed. Baxter and Thos. H. Malone*, for defendants.

THE CHANCELLOR :—On the 22d of March, 1873, E. and J. Northman for the use of John Lawrence, assignee, and John Lawrence, assignee, filed their bill against several foreign insurance companies made defendants, and Claflin & Co. and Tweedy & Co., two New York firms, and W. M. Hobbs, comptroller of the state of Tennessee, alleging that the complainants Ed. and J. Northman were partners in business in Nashville, with a stock of goods insured by the defendant insurance companies to the amount of $25,000, as specifically set out, and that on the night of the 2d and 3d of January, 1873, a fire broke out in their store house destroying their entire stock of goods valued at forty or fifty thousand dollars, except a remnant of the value of $650, which, by agreement with said insurance companies immediately after the fire, complainants took at that price. That complainants have served upon said defendants such notice, and furnished them such proofs of loss as were required by the terms of the respective policies, but said defendants have refused to adjust the losses. That, in consequence, complainants have made a general assignment, for the benefit of all their creditors, without preference, of all their property, interests, choses in action, &c., to their co-complainant Lawrence, who has accepted the trust and qualified according to law. That this deed of trust has been duly proved and registered. That Claflin & Co. and Tweedy & Co. are now proceeding under the statute of New York, by some mode of procedure the nature of which is unknown to complainants, and the legality denied, to enforce their claims against complainants adversely to said assignment. That said defendants are creditors and their claims recognized by the deed of assignment, and ought not to be permitted to obtain any undue advantage over other creditors. That by the laws of Tennessee each of said insurance companies was required to deposit with the comptroller of the state of Tennessee the sum of twenty thousand dollars in bonds, and have such deposit in the hands of defendant Hobbs as comptroller. That said companies are non-residents of the state, and said

bonds are the only property they have in this state. That said bonds are about to be withdrawn by said defendants and removed from the state. That the legislature now in session has enacted a law changing the mode of doing business in this state by foreign insurance companies, and that, in consequence, said companies will be permitted to withdraw their bonds unless restrained by the court. That the defendant, the Liverpool, London & Globe Ins. Co. has given notice through the public prints of its withdrawal from the state, and has closed its agency at Nashville. The bill prayed for an attachment of the property of the said companies, and especially of the bonds in the hands of Hobbs as comptroller, and also an injunction against the delivery of said bonds to said companies, and their withdrawal by said companies. The bill prayed that an account of the indebtedness of defendants to the complainants be taken, and that the property attached be subjected to the satisfaction of said indebtedness, &c.

Injunction seems to have issued under the fiat obtained and been served, but no attachment.

The defendants Hobbs and Lawrence have answered this bill, and the insurance companies each filed a separate demurrer on the 20th of May, 1873. Lawrence's answer is to the new bill.

On the 20th of September, 1873, what is called a bill of revivor and amended bill was filed by R. McPhail Smith, as assignee in bankruptcy of E. and J. Northman, against the four insurance companies made defendants to the previous bill, describing three of them as existing under the laws of the United Kingdom of Great Britain and Ireland, and the other as existing under the laws of the state of Connecticut, and " all doing business in the state of Tennessee now or recently," and against the said John Lawrence and John C. Burch, the latter as comptroller of the state of Tennessee.

This bill commences by stating the filing of the former bill, the parties to it, and its contents, object and prayer. It states that certain New York creditors, without naming them,

meaning Claflin & Co. and Lee Tweedy & Co. were made parties, but unnecessarily, since their proceedings were had in New York beyond the jurisdiction of the court.

The bill then states that since the filing of the 'former bill, and within the period of four months from the date of the assignment to Lawrence, such proceedings were had in the district court of the United States for the Middle District of Tennessee, at the instance of the creditors of E. & J. Northman, that they were duly declared bankrupts, and afterwards complainant was duly elected their assignee in bankruptcy, and duly qualified, and thereupon the conveyance was made to him, as provided by § 14 of the act, of all the property and estate of said bankrupts, "and by force of said acts and said proceedings, the assignment aforesaid being void, the right to maintain the suit aforesaid vested in complainant as such assignee." "Complainant desires that said suit, except as against said New York creditors of said bankrupts, be revived in his name as such assignee, and that the same stand in the same plight and condition as against said companies and the present comptroller as previously to said bankruptcy proceedings."

"And complainant desires to amend said bill by adding to the averments thereof (of which the substance has been given, and which as so given are hereby repeated, being adopted and affirmed by complainant as true, to the best of his information and belief), the following, viz., that while it is true that the condition was contained in the policy of the said Imperial Fire Ins. Co. of London, that the same should be void if any other insurance should be made upon the property covered thereby without the consent in writing thereon of said company; and while it is true that said company consented thus to additional insurance on said property of only $10,000, and that nevertheless additional insurance of $20,000 was effected thereon, yet it is also true that subsequently thereto said company knew of this, and waived the want of compliance with said restriction, and elected not to cancel its risk in consequence thereof, but to retain the pre-

mium paid, and to consent to the $20,000 additional insurance, and to waive the unnecessary particularity of endorsing this consent upon the policy."

"Complainant would also point out, so as to bring into greater prominency, the arrangement by which all four companies accepted the remnant aforesaid at a valuation agreed upon, the effect of which was to render it impracticable to ascertain the precise amount due from each company on account of the premises, without an account between the insured, or their legal representatives, and said companies, thus necessitating the joinder of all four companies as defendants in the suit aforesaid, and in the present bill."

The prayer is "that said suit be revived as aforesaid in the name of complainant as such assignee as aforesaid," and for the same relief asked for in the former bill.

The defendants, the insurance companies, each moved to dismiss this (so called) "Bill of Revivor and Amended Bill," upon the following grounds:

1. Because no precedent can be found where a party has filed a bill to revive a suit in his favor, and asks in the same bill to amend the original bill before his right to revive it in his favor has been established.

2. Because an assignee in bankruptcy has no right to file a bill of revivor. He can only file a supplemental bill.

3. Because if regarded only as an amended bill, leave should have been obtained from the court, a demurrer having been filed to the original bill. Code, § 4334.

The first of these grounds, is equivalent to saying that the bill is unknown to the forms of the court, because no example can be found of a bill of revivor which, in addition to reviving the suit, seeks also to amend the original bill. And, perhaps, this may be true of a bill of revivor, strictly so called. The death or marriage of one of the original parties is the most common, if not the sole cause, of the abatement of a suit in equity. Story Eq. Pl., § 354. But, even in these cases, a bill of revivor, properly so called, lies only where the interest of the decedent is transmitted by law, and the

title cannot be disputed. Thus, whenever a suit abates by death, and the interest of the person, whose death has caused the abatement, is transmitted to the representative which the law gives or ascertains, as an heir at law, or an executor or administrator, so that the title cannot be disputed, at least in the court of chancery, but the person in whom the title is vested is alone to be ascertained, the suit may be continued by a bill of revivor merely. So, if a suit abates by the marriage of a female plaintiff, and no act is done to affect the rights of the party but the marriage, no title can be disputed. The person of the husband is the sole fact to be ascertained; and, therefore, the suit may be continued in that case, likewise, by bill of revivor merely. Story Eq. Pl., § 364. In these cases the revivor is of course, if the character of the new party is conceded.

But there are many cases, even when the abatement is by death, to which the simple bill of revivor does not apply. These are cases where other facts may be brought into litigation besides the mere question of the character of the new party. Under such circumstances, an original bill in the nature of a bill of revivor, is the appropriate process to bring these facts before the court, and to put the original proceeding again in motion, and to enable the new party to have the benefit of the former proceedings. Story Eq. Pl., § 377.

The ground of distinction is, that bills of revivor proper are founded on mere privity of blood or representation by operation of law; and original bills in the nature of bills of revivor upon privity of estate or title by the act of the party. Id., § 379. And when the validity of the alleged transmission of interest in the latter class of cases is established, the party to the new bill will be equally bound by, or have advantage of the proceedings in the original bill as in cases of privity of blood or representation. Id., § 380.

And if, in addition to the transmission of the estate or title, the right or title of third persons become involved, as where, upon the marriage of a female plaintiff, her property

becomes vested by a settlement in trustees, the interest of such third person must be brought before the court by original bill, in the nature of a supplemental bill, and bill of revivor. Id., § 381. But in this class of cases, it seems, a new defense may be made, and the pleadings and depositions cannot be used in the same manner as if filed or taken in the same cause. Id., § 384.

It is clear that by the bankruptcy of a party the suit is not abated, and, therefore, technically a revivor is not necessary. The appropriate remedy is an original bill in the nature of a supplemental bill. Id., § 349, 383, note 3; *Sedgwick* v. *Cleveland*, 7 Paige, 287, 290. However, in *Harrison* v. *Ridley*, Com. R. 580, a bill by the assignees of an insolvent debtor was called an original bill in the nature of a bill of revivor. And in *Randall* v. *Mumford*, 18 Ves. 424, 428, Lord Eldon said: "This court, without saying whether bankruptcy is or is not strictly an abatement, has said, that, according to the course of the court, the suit has become as defective as if it was abated; and as the assignees will have the benefit of the suit, and assuming in practice that he who is a bankrupt will continue, the course which the court has taken is to require him to bring his assignees *before it by bill of revivor, or supplemental bill in the nature of a bill of revivor, or by whatever name it is called.*"

This language of the great English Chancellor shows that the learned counsel who drafted the bill now before us is not without precedent for his nomenclature, whatever may be said of the substance of his bill. It shows us, moreover, what this court, following the repeated decisions of the supreme court, has often said, that equity looks to substance, not words and names. Although, therefore, the bill under consideration, if a pure bill of revivor, may be amenable to some of the objections raised by the motion to dismiss, yet being in reality an original bill in the nature of a supplemental bill and bill of revivor, the motion is not well taken. Story Eq. Pl., § 331, note 3. For, as an original bill the complainant had the right to shape his bill as he might be

advised in relation to matters in existence when the former bill was filed, and to bring in anything which has since occurred in its character as supplemental. Story Eq. Pl., § 332. If, however, the modification of the old matter should be such as to make an entirely new case, the complainant might lay himself open to demurrer on that score, and to the loss of any benefit of the former proceedings. But it is not necessary to decide these matters. All I can do now is to disallow the motion.