BARNARD, (GIBSON v.) See Case No. 5,-389.

---

## Case No. 1,003.
### BARNARD et al. v. HARTFORD, P. & F. R. CO. et al.[1]

Circuit Court, D. Connecticut. Oct. 14, 1878.

EQUITY—PARTIES—ASSIGNEE IN BANKRUPTCY—CROSS BILL.

[1. Under the bankrupt act of 1867, § 2, a circuit court has jurisdiction of a cross bill, filed

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[1] [Not previously reported.]

by an assignee in bankruptcy in a district other than that in which the decree in bankruptcy was made, to redeem mortgaged property in which the complainant has the legal title to the equity of redemption.]

[2. The jurisdiction acquired by a circuit court sitting in equity, by virtue of the character of the complainant as assignee in bankruptcy, is not lost merely because the complainant has parted with all his title pendente lite; and the court also has jurisdiction of a cross bill filed by a new defendant, irrespective of his residence.]

[3. Where a sole complainant parts with his interest pendente lite, the suit is not thereby forthwith abated, but no further proceedings can be had until his assignee is made a party, either by being cited in, or as successor to one of the original defendants.]

[4. Where a corporation has obtained the title of one of the original defendants pendente lite, it may properly become a defendant, and seek relief by a cross bill, although it has also acquired the sole complainant's title pendente lite, and could come in as complainant.]

[5. Where a cross bill setting up additional facts, and praying for affirmative and independent relief against the other defendants, introduces no distinct and separate matter, a decree dismissing the original bill (the complainant having no longer any interest) does not dispose of the cross bill, and the cross complainant may obtain the relief prayed for therein, notwithstanding such decree.]

[6. Where plaintiffs have lost their title to the equity of redemption of mortgaged property by operation of law, and it has become vested in the corporation which brings the cross bill, the only other party with a substantial interest being another defendant, the mere fact that pendente lite the plaintiffs have lost their interest, and consequently no decree is asked either for or against them, should not prevent the party entitled to redeem from gaining its rights.]

[7. The N. Y. & N. E. R. Co. had the apparent legal title to the equity of redemption of a mortgage on the H., P. & F. R. Co., which was held and operated by the mortgage trustees, and had raised $1,500,000 to pay off the mortgage, and had actually paid and canceled $850,000 of the mortgage bonds, and stood ready to pay the remnant. It also proposed to complete the road, and thereby enhance its value. A suit in equity brought by the stockholders of the H., P. & F. R. Co. was pending in a state court to render void the title of the N. Y. & N. E. R. Co. to the H., P. & F. R. Co. because of fraud. *Held*, that the N. Y. & N. E. R. Co. was entitled to possession pending the said suit as legal owner of the equity of redemption, and as, in equity, the owner of the mortgage which it had paid.]

[In equity. Bill by George M. Barnard, Charles S. Bradley, and Charles R. Chapman, assignees in bankruptcy of the Boston, Hartford & Erie Railroad Company, against the Hartford, Providence & Fishkill Railroad Company, George M. Bartholomew, Calvin Day, and Francis B. Cooley, trustees under a mortgage of the property of said railroad in Connecticut, certain trustees under a mortgage of the property of said railroad in Rhode Island, and William F. Hart and other trustees under a mortgage of all the property of the Boston, Hartford & Erie Railroad Company; praying that the plaintiffs might redeem the Connecticut mortgage, of which the bankrupt road had the equity of redemp-

tion. Pendente lite, Hart and his cotrustees. their mortgage having been foreclosed, conveyed to the New York & New England Railroad Company all their rights, including the equity of redemption of the Connecticut mortgage, which company subsequently acquired all the title of the assignees in bankruptcy, and was thereafter made a party defendant. A motion by Bartholomew and his cotrustees to dismiss the bill for lack of jurisdiction had been overruled. Heard on a cross bill by the New York & New England Railroad Company, praying that it might redeem the Connecticut mortgage, and have its title quieted. Decree for cross complainant, saving the rights of the stockholders of the Hartford, Providence & Fishkill Railroad Company.]

Charles E. Perkins, for plaintiffs.

Simeon E. Baldwin, for New York & N. E. R. Co.

John C. Day and Alvan P. Hyde, for trustees under the Connecticut mortgages, and for Hartford, P. & F. R. Co.

George W. Baldwin, for Berdell trustees.

SHIPMAN, District Judge. The Hartford, Providence & Fishkill Railroad Company, a corporation established by the legislature of Connecticut and of Rhode Island, mortgaged to Thomas S. Williams, William H. Imlay and David F. Robinson, as trustees, by deeds dated August 25, 1849, and March 20, 1855, its railroad, franchises, and, with certain exceptions, its real estate then owned, or thereafter to be owned, by it in the state of Connecticut, and also its cars, engines and personal estate then owned, or thereafter to be acquired, to secure certain bonds of said company. In the year 1858, there having been default in the payment of said bonds or of the interest thereon, said trustees or their successors took possession of the mortgaged estate, and either said trustees or their successors in said trust have ever since been in possession and have managed said mortgaged property, and have operated said road for the benefit of the bondholders. Calvin Day, George M. Bartholomew and Francis B. Cooley, all of Hartford, Connecticut, are now, and long have been, the trustees and are the duly appointed successors of the said Williams, Imlay and Robinson in said trust. On September 30, 1878, $1,574,500 of said bonds secured by said mortgage were overdue, outstanding, and unpaid. By a contract, lease and conveyance dated August 28, 1863, authorized by the states of Connecticut and Rhode Island, said company sold, leased and transferred, subject to its mortgages in Connecticut and Rhode Island, all its property and franchises to the Boston, Hartford & Erie Railroad Company, whereby the legal title to the equity of redemption in said mortgaged property passed to and became vested in the last-named company. On March 19, 1866, the Boston, Hartford & Erie Railroad Company mortgaged to Robert H. Berdell,

Dudley S. Gregory, and J. Bancroft Davis, as trustees, all its railroad property, to secure $20,000,000 of bonds, which mortgage is usually known as the "Berdell Mortgage." Said mortgage purported to include and convey, and did convey, the rights and property acquired by the last-named company from the Hartford, Providence & Fishkill Railroad Company. A large amount of bonds were issued and were sold to sundry persons upon the faith of this mortgage. On March 2, 1871, the Boston, Hartford & Erie Railroad Company was duly adjudicated a bankrupt by the district court of the United States for the district of Massachusetts, and on March 18, 1871, George M. Barnard, Charles S. Bradley, and Charles R. Chapman were duly appointed assignees in bankruptcy of said company, and became qualified as such, and received an assignment of its estate in due form of law. On March 15, 1873, said assignees filed in this court their bill in equity against the Hartford, Providence & Fishkill Railroad Company, said Day, Bartholomew and Cooley, as trustees, William F. Hart, Charles P. Clark and George T. Olyphant, the existing trustees under the Berdell mortgage, and the trustees under a mortgage of said company of its real estate and property in Rhode Island, setting up all the foregoing facts, and praying that the Connecticut trustees account to the plaintiffs, and that said assignees might redeem said mortgaged property, and that the Connecticut trustees should be directed to deliver possession of the property which was mortgaged to them to said assignees. All parties appeared save the Rhode Island trustees. The Connecticut trustees, at the April term, 1874, of this court, moved to dismiss the bill, upon the ground that the court had no jurisdiction of the case by reason of the citizenship of the parties; this motion was overruled, for the reason that jurisdiction was conferred upon this court by the second section of the bankrupt act of 1867. Answers were thereafter filed by the defendants.

On July 1, 1870, the Boston, Hartford & Erie Company made default of payment of the interest due upon the Berdell mortgage. On September 13, 1871, the Berdell mortgage trustees took possession of all the property covered by that mortgage so far as they were able to do so, and continued in possession for the period of eighteen months. On April 2, 1872, the principal of the Berdell mortgage bonds became due. At the expiration of said eighteen months, said default continuing, the Berdell mortgage bondholders were duly constituted, agreeably to the terms of said mortgage, a corporation, by the name of the New York & New England Railroad Company, for the purpose of acquiring and holding the title by foreclosure of the mortgaged property. Afterwards, by acts of the legislature of Massachusetts, Connecticut, Rhode Island and New York, this corporation was fully incorporated. On

April 24, 1873, the Berdell mortgage trustees, pursuant to decrees of courts having jurisdiction of the subject-matter, said mortgage having been duly foreclosed by said decrees, conveyed to the New York & New England Railroad Company the rights, franchises and estate conveyed by and included in the Berdell mortgage. This corporation thereupon entered into possession of said property, and still continues in such possession. On July 28, 1875, the assignees in bankruptcy of the Boston, Hartford & Erie Railroad Company conveyed to the New York & New England Railroad Company all their right in and to the railroad, rights, franchises and estates of said bankrupt corporation, subject to a proviso that nothing contained in said conveyance should be construed to affect the rights of stockholders, if any, of the Hartford, Providence & Fishkill Railroad Company, and stipulated that such disposition might be made of this bill as should carry out the intent of said conveyance. On September 2, 1878, pursuant to an application dated August 23, 1878, and an order of notice thereon, the New York & New England Railroad Company was admitted as a party defendant to said bill, with liberty to file such plea, answer or cross bill as it might be advised. Said company subsequently filed a cross bill, setting forth all the foregoing facts, and averring that they are ready and willing to pay the principal and interest of all the bonds secured by the Connecticut mortgages of the Hartford, Providence & Fishkill Railroad Company, and to redeem the property covered by said mortgages, and praying that all the parties to said bill save the trustees under the Rhode Island mortgages, who had never been served with process, might answer and show cause why the prayer should not be granted, and that said Connecticut trustees might account to the New York & New England Railroad Company, and might, upon payment of said bonds, deliver up the property covered by the Connecticut mortgages, and make such assurances and conveyances as might be deemed proper, and that its title might be quieted as against all the defendants in the cross bill. All said defendants have answered, and have substantially admitted all the facts hereinbefore stated to be true.

The Connecticut trustees and the Hartford, Providence & Fishkill Railroad Company, in their answer, aver that on or about December 30, 1875, the Boston & Providence Railroad Company, and Earl P. Mason, of Providence, Rhode Island, notified, in writing, Calvin Day, the president of the Hartford, Providence & Fishkill Railroad Company, that they, with others owners of shares in the capital stock of said company, claimed to be the then owners of the rights, property and franchises of said company, subject to certain mortgages thereon, and requested said Day, as an officer of said

company, and in its name, to commence legal proceedings for the redemption of said mortgages, and to invalidate the pretended title of said Boston, Hartford & Erie Railroad Company and all persons claiming under them, which request was not complied with, and that on December 31, 1875, a bill in equity was filed in the supreme court of the state of Rhode Island, by the Boston & Providence Railroad Company, and sundry others, in behalf of themselves and such other owners and holders of stock of the Hartford, Providence & Fishkill Railroad Company as shall come in and contribute to the expenses of said suit, against the New York & New England Railroad Company, and the Connecticut & Rhode Island trustees under the mortgages of the Hartford, Providence & Fishkill Railroad Company; praying that the conveyances by said company to the Boston, Hartford & Erie Railroad company be declared to be void, and that the right and title of the New York & New England Railroad Company to the property and franchises of the Hartford, Providence & Fishkill Railroad Company be declared to be void, and that the plaintiffs be decreed to be entitled to the possession of the property of the last-named company upon the redemption of the valid mortgages thereon, and that said trustees may be restrained from delivering to the New York & New England Railroad Company the possession and control of said property, in which suit the trustees under the Connecticut mortgages were not served with process. Said suit is still pending. On September 30, 1878, a suit in equity in favor of substantially the same plaintiffs against the same defendants was commenced in the superior court for Hartford county in this state. The bill embraces substantially the same allegations and prayers as those contained in the bill which was filed in the supreme court of the state of Rhode Island, and the Connecticut trustees have been served with process. Upon the hearing in this court upon pleadings and proofs, it appeared that on or about July 1, 1878, the New York & New England Railroad Company gave public and general notice, by advertisement and otherwise, that the bonds issued under the Connecticut mortgages would be paid in full at the American National Bank in the city of Hartford on October 1, 1878, with interest to said date, and that interest would thereafter cease; that said company provided itself with funds sufficient to pay said bonds, and on October 1, 1878, commenced said payment at said bank; that about $850,000 of bonds had been presented, paid, surrendered and cancelled on October 9, 1878; that the money due upon about $500,000 of bonds held by the city of Hartford had been tendered its treasurer, who declined to receive the same until authorized by vote of the court of common council of said city; that money sufficient to pay all the outstanding bonds was on deposit for that purpose; and that the outstanding bonds were constantly being presented and paid. Said company offered to deposit in court money sufficient to pay the principal and interest of all said bonds, or otherwise comply with the order of court touching said payment.

Upon the foregoing facts, the trustees under the Connecticut mortgages present two questions for the consideration of the court;

1st. It being apparent that, prior to the conveyance of the assignees in bankruptcy to the New York & New England Railroad Company, the title of such assignees to the equity of redemption had become lost by foreclosure of the Berdell mortgage, and that no decree in regard to redemption or foreclosure is asked for or against the plaintiffs, can the court properly render any other decree than one of dismissal of the bill?

The original bill was brought by assignees in bankruptcy in a circuit court in a district other than that in which the decree of bankruptcy was made, to redeem a mortgage upon property in which the plaintiffs had an equity of redemption. Of this suit, this court had jurisdiction. Lathrop v. Drake, 91 U. S. 516. At the time suit was brought, the assignees had the title to the property subject to the various mortgages thereon, and had the right of redemption. Their title was subsequently lost by the foreclosure of the Berdell mortgage. If a sole plaintiff, suing in his own right, is deprived of his interest in the subject-matter in question by an event subsequent to the institution of the suit, his assignees or those succeeding to or having acquired his rights may have the benefit of the proceedings which have been already instituted by an original bill in the nature of a supplemental bill. Story, Eq. Pl. § 349. If the defendant, in a bill to foreclose or redeem a mortgage, conveys his interest in the property, pendente lite, to a third person, and that person desires to have the benefit of the title so gained for affirmative relief in respect to the matters charged in the original bill, as, for example, to redeem the mortgaged property, he must obtain such relief by filing a bill in the nature of a cross bill. Id. § 351. In this case the title of the plaintiffs became vested by operation of law or by decree of court, pendente lite, in the trustees of the Berdell mortgage, defendants in the original bill, all whose title, both original and that subsequently acquired, became vested, pendente lite, in the New York & New England Railroad Company. This company had a right to become a defendant, as assignee of the title of one of the original defendants, and properly filed a cross bill for relief simply as to the matters charged in the original bill. Inasmuch as it is properly seeking relief because it has succeeded to all the rights of a defendant, it is not important to inquire whether it could also have come in as plaintiff by reason of the acquisition of the plaintiffs' title through the Berdell

trustees. The fact that the plaintiff has parted with his interest, pendente lite, does not forthwith abate the suit, but the assignee must be made a party before the suit can be proceeded with. "The proper course for the defendant, in such a case, if he wishes to have the suit proceeded in or put an end to, is to apply to the court for an order that the assignee file a supplemental bill, in the nature of a bill of review, within such time as shall be prescribed by the court for that purpose, or that the complainant's bill be dismissed." Sedgwick v. Cleveland, 7 Paige, 287. In this case the assignees of the plaintiffs' interest were already defendants, and therefore there was no necessity of citing them in. It does not harm the position of the new defendant that it also became vested by direct conveyance from the original plaintiffs of any shred of title which might have been left outstanding in them. The court has not lost jurisdiction of the case because the plaintiffs, by virtue of whose character as assignees in bankruptcy it obtained jurisdiction, have parted with all their title, pending the suit. "It is quite clear that the jurisdiction of the court depends upon the state of things at the time of the action brought, and that, after vesting, it cannot be ousted by subsequent events." Mollan v. Torrance, 9 Wheat. [22 U. S.] 537; Clarke v. Mathewson, 12 Pet. [37 U. S.] 164. Having jurisdiction of the original bill, it has jurisdiction of the cross bill, which may be filed by a new defendant, irrespective of his residence. The cross bill is auxiliary to the original suit. Jones v. Andrews, 10 Wall. [77 U. S.] 327.

But it is claimed, inasmuch as the New York & New England Railroad Company seek for no affirmative relief against the original plaintiffs, who have no longer any interest in the subject-matter, that no decree can be rendered in the case except that the bill be dismissed. If the decree dismissing the original bill disposes of the whole controversy between all the parties, the cross bill follows the fate of the original bill. Dows v. Chicago, 11 Wall. [78 U. S.] 108. In a very large class of cases, however, the cross bill sets up additional facts, and prays for affirmative and independent relief; in such cases, while the original bill may be dismissed, the defendant may obtain a decree upon his cross bill for the relief prayed for. The trustees claim that a dismissal of the original bill disposes of the cross bill, except in cases where the cross bill prays for relief against the plaintiff. While it is true that usually a cross bill is brought to obtain relief against the plaintiff, it is not indispensable that such should be its purpose. The substance of the authorities on the subject is, that a cross bill is properly brought by a defendant against the plaintiff in the same suit, or against other defendants in the same suit, or against both, as to the matters in question in the original bill. Its purpose

is to obtain relief to all parties as to the matters charged in the original bill. New and distinct matters which constitute the subject of an independent suit, not embraced in the original bill, should not be introduced. A litigation between the defendants, with which the plaintiff is not concerned, should not be the subject of a cross bill. "It is auxiliary to the original suit, and a grant and dependency upon it. If its purpose be different from this, it is not a cross bill, though it may have a connection with the same general subject." Ayres v. Carver, 17 How. [58 U. S.] 591; Cross v. De Valle, 1 Wall. [68 U. S.] 1; Rubber Co. v. Goodyear, 9 Wall. [76 U. S.] 807. The cross bill in this suit strictly deals with the matters charged in the original bill, and introduces no distinct and separate matter.

But even if the general rule is as contended for by the trustees, the circumstances of this case are sui generis, and exceptional. The plaintiffs have lost their title by operation of law. It has become vested in the corporation which brings the cross bill. The only parties before the court who have a substantial interest in the subject-matter are the New York & New England Railroad Company and the Connecticut trustees. The mere fact that, on account of transfers pendente lite, the original plaintiffs have lost their interest, and consequently no decree is asked either for or against them, should not prevent the party which is entitled to redeem and to the possession of the mortgaged property from gaining its rights.

2nd. It is next urged that no decree should be rendered until the plaintiffs in the suits in the state courts shall have been made parties to this bill, and a determination shall have been had of the validity of their claim.

The suit of the stockholders of the Hartford, Providence & Fishkill Railroad Company is upon the ground that the conveyance to the Boston, Hartford & Erie Company was void by reason of fraud and misrepresentation on the part of said company. The New York & New England Railroad Company has the legal title to the equity of redemption. Whether its apparent title is void by reason of the fraud of its assignor is the subject of controversy. In addition to this apparent legal title, that company has now raised a million and half of dollars to pay the mortgage, has paid and cancelled $850,000 of the bonds, has tendered payment of the amount due the city of Hartford upon $500,000, and is ready to bring into court the sum necessary to pay the remainder. If its title to the equity of redemption shall be set aside, it will still be in equity the owner of the mortgage which it has paid, and will be, upon payment, subrogated to all the rights of the Connecticut trustees, one of which rights is the possession of the railroad for the benefit of the mortgagees. I do not consider in this connection any equitable rights which it may claim to have as the

successor of the Berdell bondholders, but it is eminently proper that the corporation which, having the legal right to redeem, has paid the first mortgage, should have the possession of the property as against persons who have not yet substantiated either legal or equitable title. It is important that it can hardly be contended that serious injury will result to the claimants by reason of the possession of the New York & New England Company, which proposes to complete the western end of the road. If this is done, the value of the franchise and of the property will be enhanced.

Let there be a decree in general accordance with the prayer of the cross bill, but with a proviso that nothing in said decree shall affect or impair the right, title or claim of any person or corporation who claim to be stockholders of the Hartford, Providence & Fishkill Railroad Company. The terms and details of the decree will be settled upon hearing.